NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0517-13T1

IN THE MATTER OF AN
INITIATIVE PETITION FOR THE
ADOPTION OF AN ORDINANCE TO
AMEND THE JACKSON TOWNSHIP
ADMINISTRATIVE CODE.

| APPROVED FOR PUBLICATION |
| :---: |
| **September 8, 2014** |
| **APPELLATE DIVISION** |

Argued February 26, 2014 — Decided September 8, 2014

Before Judges Grall, Nugent, and Accurso.

On appeal from Superior Court of New Jersey,
Law Division, Ocean County, Docket No. L-
1217-13.

Renée Steinhagen argued the cause for
appellants Nicolas Antonoff, Catherine V.
Giancola, Richard F. Davidson, Raymond J.
Cattonar, and Roger E. Downing (Zazzali,
Fagella, Nowak, Kleinbaum & Friedman, and
New Jersey Appleseed Public Interest Law
Center, Inc., attorneys; Ms. Steinhagen and
Flavio L. Komuves, on the brief).

Kevin N. Starkey argued the cause for
respondents Mayor and Township Council of
Jackson Township (Starkey, Kelly, Kenneally,
Cunningham & Turnbach, attorneys; Mr.
Starkey, on the brief).

The opinion of the court was delivered by

NUGENT, J.A.D.

This appeal involves a governing body's pre-election
challenge to an ordinance proposed in an initiative petition.
The trial court declared a section of the ordinance unlawful

but, notwithstanding a severance clause in the ordinance, declined to sever the unlawful section and order that the excised ordinance be placed on the ballot. We affirm. We conclude that the trial court had the authority to hear the pre-election challenge to the proposed ordinance. We further conclude that the court did not have the authority to revise the ordinance and order that the altered ordinance be placed on the ballot.

I.

Appellants, Nicolas Antonoff, Catherine V. Giancola, Richard F. Davidson, Raymond J. Cattonar, and Roger E. Downing, were the Committee of Petitioners responsible for an initiative petition to amend a Jackson Township ordinance. Respondents are the Mayor and Council of Jackson Township. Jackson Township is organized under the Optional Municipal Charter Law (the Faulkner Act), N.J.S.A. 40:69A-1 to -210. The power of local self-government in municipalities organized under the Faulkner Act includes, with some exceptions, the right of voters to "propose any ordinance and . . . adopt or reject the same at the polls, such power being known as the initiative." N.J.S.A. 40:69A-184. "Any initiated ordinance may be submitted to the municipal council by a petition signed by" a required percentage of legal

voters. Ibid.; see also N.J.S.A. 40:69A-185 (setting forth the procedures for the referendum process).

The petition must contain "the names and addresses of five voters, designated as the Committee of the Petitioners, who shall be regarded as responsible for the circulation and filing of the petition and for its possible withdrawal as hereinafter provided." N.J.S.A. 40:69A-186. As previously noted, appellants are the Committee of Petitioners responsible for filing the petition and proposed amended ordinance that are the subject of this appeal.

The events that led to the initiative in this case began in November 2011 when two of the appellants, Catherine V. Giancola and Raymond J. Cattonar, prepared a "Jackson Township Feasibility Study" on the topic of "Insourcing [the] Legal Department." Their study "relied on, among other things, extensive interviews of knowledgeable persons, and a thorough review of available literature on the matter."

The purpose of the study was to "ascertain whether it is more cost effective to retain an in-house legal staff versus outsourcing Jackson Townships [sic] legal needs," which was the practice at the time. The study recommended, as a cost-saving measure, employing in-house counsel and a paralegal instead of outsourcing legal work to a private firm. The study also

proposed a shared-services agreement between the Township and the Jackson Board of Education (the Board), in which the Township's new in-house counsel would also handle legal matters for the Board, at no additional cost. The Township and the Board would still be able to retain outside counsel for specialized legal services that could not be handled by the new in-house attorney and paralegal.

From November 2011 through January 2012, appellants "oversaw the drafting of the petition and ordinance" that proposed to amend the Township's code provisions concerning its legal department and municipal attorney. The ordinance provides:

> 1. Section 3-87 of the Jackson Township Administrative Code is amended to read as follows:
>
> A. There is hereby created the Department of Law, the head of which shall be the Director of Law, who shall be the Municipal Attorney. The Director of Law shall be a full-time salaried position, the compensation for which shall be fixed by the Council. There is also created the position of Paralegal Specialist within the Department of Law which shall be a full-time salaried position, the compensation for which shall be fixed by the Council. No full-time attorney of the Division of Law shall engage in any other practice of law for compensation unless the Mayor, in a signed writing, has approved the particulars of such other employment or practice of law.

B.   The Director of Law and the Paralegal Specialist shall be appointed by the Mayor with the advice and consent of the Township Council and, unless provided by other law, shall serve at the pleasure of the Mayor and Council.   The Municipal Attorney shall be a graduate of an accredited law school duly admitted to the practice of law in the State of New Jersey for at least five years and an attorney at law of the State of New Jersey in good standing.

C.   In order to efficiently and competently discharge the duties of the Division of Law, the Director of Law, within the limits of available appropriations, may retain other attorneys, paraprofessionals and other staff, either on a full- or part-time salaried or contract basis.   Any retention of the services of other persons shall not be effective until disclosure of the person(s) retained and the purpose of their retention is made in writing to the Municipal Council at a public meeting.

D.   The Division of Law, acting through its Director or such other person who has been delegated authority by the Director, shall be a legal advisor to the Mayor, Council and all departments, except as otherwise provided by the Charter or the Township Code.   The Division of Law, acting through its Director or such other person who has been delegated authority by the Director, shall prosecute and defend actions and proceedings by and against the Township and every department thereof.   In furtherance of these general powers and without limitation thereto, the Division shall:

(1) Advise the Council and its members, the Mayor and other officers of the Township, as to all matters which may be submitted for its opinion.

A-0517-13T1

(2) Review and approve all contracts, deeds, documents and instruments prior to the execution thereof by or on behalf of the Township.

(3) Institute litigation and conduct appeals from orders, decisions or judgments affecting any interest of the Township as determined in its discretion to be necessary or desirable.

(4) Subject to the approval of [the] Council, have the power to enter into any agreement, compromise or settlement of any litigation in which the Township is involved.

(5) Render opinions in writing upon any question of law submitted by the Mayor, the Council, the Business Administrator, Municipal Clerk, Tax Assessor, or the head of any department.

(6) Maintain a record of all actions, suits, proceeding and matters which relate to the Township's interest and report thereon from time to time as the Mayor or Council may require.

(7) Attend such Council meetings as requested by [the] Council.

(8) Have such other and different functions, powers and duties as may be provided by the Charter, this chapter or other ordinance; and

(9) At the request of the Jackson Township Board of Education or the duly-appointed officials thereof, and provided there is no conflict of interest under the Rules of Professional Conduct or other law regarding conflict of interest, provide the services described in this Section D to the Board of Education, without additional fees or compensation.

2. All ordinances inconsistent with this Ordinance are repealed to the extent of their inconsistency.

3. This Ordinance shall take effect on the 30th day following its approval by the Mayor and Council or, if submitted to and approved by the voters pursuant to [N.J.S.A.] 40:69A-184 et seq., on the 30th day following certification of the election results pursuant to [N.J.S.A.] 19:20-1 et seq.

4. The provisions of this Ordinance are severable. If any part of this Ordinance, or application of this ordinance, shall be ruled illegal, unconstitutional or void, the remaining parts of this ordinance shall be unaffected by such ruling. Every person signing an initiative petition proposing this ordinance, and every person voting to approve this Ordinance, would have signed the petition and/or voted to approve this ordinance notwithstanding the possibility that one or more parts of this Ordinance or applications of this Ordinance might be ruled illegal, unconstitutional or void.

In addition to the ordinance, a proposed question and interpretive statement for the election ballot were drafted. They stated:

QUESTION. Shall the Ordinance submitted by initiative petition, amending Section 3-87 of the Jackson Township Administrative Code ("Department of Law") and providing for a full-time salaried Director of Law and other staff, and authorizing the Board of Education to use the services of the Division of Law, be adopted?

INTERPRETIVE STATEMENT. This Ordinance proposes to amend the Jackson Township

7

Administrative Code to provide for a full-time salaried Director of Law and other professional and nonprofessional staff. It would also authorize the Board of Education, in appropriate circumstances, to use the legal services of the Division of Law for its legal needs. The Ordinance would replace the current system of relying exclusively on part-time attorneys compensated by hourly rate rather than salary for the legal needs of the Township. A "Yes" vote is a vote to approve the Ordinance. A "No" vote is a vote against the Ordinance.

After appellants obtained the required number of signatures for the petition, they filed it, and the municipal clerk presented it to the members of the Township Council, who voted unanimously to decline to adopt it. The ordinance would have been placed on the ballot following the Council's action, but after some delays not relevant to this appeal, the Mayor and Council filed a complaint for declaratory judgment. In their complaint, they alleged that provisions of the ordinance were illegal, including the provision that provided for shared services with the Board of Education. Appellants answered, and the trial court disposed of the matter on cross-motions for summary judgment after the parties briefed and orally argued their positions.

Recognizing "countless examples of why the democratic process should be reserved to the people at all times under the Faulkner Act," the court nevertheless noted that paragraph

1(D)(9) of the proposed ordinance conflicted with the Uniform Shared Services and Consolidation Act (USSCA), <u>N.J.S.A.</u> 40A:65-1 to -35, which was enacted "to effectuate agreements between local units for any service or circumstance intended to reduce property taxes through the reduction of local expenses." <u>N.J.S.A.</u> 40A:65-2(c). The court explained that the USSCA required local units to enter an agreement to share services and concluded "that the provision of the ballot question which compels legal services to be provided to the Board of Education at [its] request if not approved by the Township Committee would ultimately fall."

Having so concluded, the court framed the dispositive issue as whether it could "excise out that portion of the [o]rdinance which violates the shared services agreement." As to that issue, the court concluded that "[t]o do so the [c]ourt would have to, in the [c]ourt's opinion, wholly change the intent of the initiative." The court explained that excising the shared services section of the proposed ordinance "would remove . . . half of the relief sought."

The court believed that by excising paragraph 1(D)(9), the proposed ordinance would be "eviscerated." Explaining that courts should be reluctant to impose their will to make petitions better, in that "[t]he will of the people should be

protected and these [p]etitions should be recognized as sacrosanct," the court concluded that severing the shared services provision of the proposed ordinance would have a significant impact on the will of the voters. Consequently, the court declared the petition and proposed ordinance null and void. Appellants appealed from the court's implementing order.

## II.

Appellants present the following arguments for our consideration[1]:

> I. EVEN IF SUBPARAGRAPH D(9) OF THE ORDINANCE WERE DEFECTIVE, THE ROBUST SEVERABILITY CLAUSE IN THE PROPOSED ORDINANCE REQUIRED THE REMAINING UNCHALLENGED PORTIONS OF THE ORDINANCE TO BE PRESENTED TO THE VOTERS.
>
> II. NEW JERSEY COURTS SHOULD NOT ENTERTAIN PRE-ELECTION CHALLENGES TO PARTS OF A CITIZEN INITIATIVE, AS SUCH CASES ARE NOT RIPE FOR RESOLUTION UNDER THE DECLARATORY JUDGMENTS ACT OR GENERAL PRINCIPLES OF JUSTICIABILITY.

"We review de novo the grant or denial of a motion for summary judgment." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013). Moreover, the material facts in this case are undisputed and this appeal presents for our review issues of law

---

[1] We have renumbered appellants' arguments as I and II. In their brief, their first point heading addressed issues the trial court decided in their favor. Respondents state explicitly that they do not challenge those rulings on this appeal.

only.  "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We address appellants' second argument first. Differentiating between "substantive" pre-election challenges to initiative ordinances on one hand, and "procedural" or "jurisdictional" challenges on the other, appellants argue that the courts of this State should not entertain a challenge to the substantive validity of such an ordinance.  Relying upon James D. Gordon, III, & David B. Magleby, Pre-Election Judicial Review of Initiatives and Referendums, 64 Notre Dame L. Rev. 298 (1989), appellants submit that such pre-election substantive judicial review "involves issuing an advisory opinion, violates ripeness requirements, undermines the policy of avoiding unnecessary constitutional questions, and constitutes unwarranted judicial interference with a legislative process." Appellants maintain that "[r]esearch has not revealed any New Jersey case where a court, in derogation of the generally-applicable principles regarding ripeness, advisory opinions, and separation of powers, has interfered with a legislative proposal that, as here, is only alleged to be *partially* invalid, and invalid on substantive grounds, not jurisdictional."

11

Appellants also argue that the courts should not entertain pre-election declaratory judgment challenges to proposed ordinances because such challenges contravene the express language of the Declaratory Judgments Act.

Appellants' argument that the Declaratory Judgments Act, N.J.S.A. 2A:16-50 to -62, does not authorize a challenge to a pre-election initiative ordinance, has previously been rejected. In City of Newark v. Benjamin, 144 N.J. Super. 58, 65 (Ch. Div.), aff'd o.b., 144 N.J. Super. 389 (App. Div. 1976), aff'd o.b., 75 N.J. 311 (1978), the defendants, in challenging a proposed ordinance, "argue[d] that an action for a declaratory judgment under N.J.S.A. 2A:16-53 is not the proper procedure because there exists no municipal ordinance to be construed." The court noted that there were several cases "in which declaratory judgments were sought before an ordinance had been enacted. In each of these cases the courts declared the rights of the parties and in each held the proposed ordinance invalid." Ibid. (citing McCrink v. Town of W. Orange, 85 N.J. Super. 86 (App. Div. 1964); Smith v. Twp. of Livingston, 106 N.J. Super. 444 (Ch. Div.), aff'd o.b., 54 N.J. 525 (1969); Twp. of Sparta v. Spillane, 125 N.J. Super. 519 (App. Div. 1973), certif. den., 64 N.J. 493 (1974)).

The court explained that such decisions carry out the purpose of the Declaratory Judgments Act, id. at 65-66, which is "to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." N.J.S.A. 2A:16-51. The court reasoned that "[i]f an ordinance is invalid on its face, it would be a useless expenditure of effort and money to submit it to the electorate before its validity has been determined." Benjamin, supra, 144 N.J. Super. at 66-67. We agree with the reasoning in Benjamin. Accordingly, we reject appellants' argument that pre-election initiative ordinances cannot be challenged under the Declaratory Judgments Act.

We also decline to follow an analytical framework in which the result is determined by whether a challenge to a pre-election initiative ordinance is characterized as "substantive," as distinguished from "procedural" or "jurisdictional." Our courts have neither adopted such classifications nor used them to determine whether an issue is ripe for adjudication. See e.g., Comm. to Recall Robert Menendez v. Wells, 204 N.J. 79, 101 (2010) (quoting Benjamin, supra, 144 N.J. Super. at 66) (explaining that "when the law giving rise to an election 'is defective on its face,' there is 'good reason' to review the law's validity before voting");

Clean Capital Cnty. Comm. v. Driver, 228 N.J. Super. 506, 510 (App. Div.) ("Ordinarily, [a] court's review of the validity of an initiative ordinance prior to its enactment is limited to whether it is defective on its face, or the petitioners have failed to follow the statutory requirements."), certif. granted in part and denied in part and modified by, 134 N.J. 468 (1988). Existing precedent provides our trial courts with an adequate framework for determining whether it is appropriate to decide pre-election challenges to initiative ordinances.

Our opinion should not be construed as either determining that the trial court correctly decided that paragraph 1(D)(9) of the initiative ordinance was invalid on its face or as rejecting as implausible the argument that paragraph 1(D)(9) could have been construed as implicitly requiring compliance with the USSCA. As respondents point out, those issues have not been raised in this appeal and thus we do not consider them.

We now turn to appellant's argument that the trial court erred by not severing paragraph 1(D)(9) from the initial ordinance and submitting the remainder of the ordinance to the voters. Appellants argue that "even if subparagraph (D)(9) of the ordinance were defective, the robust severability clause in the proposed ordinance required the remaining unchallenged portions of the ordinance to be presented to the voters." They

14

reason that the severability clause "affirmatively states the intentions of the petition's drafters, its signers, and its voters, that they wanted the ordinance to proceed even if it was struck down in part." They nevertheless acknowledge that "there is no clear New Jersey precedent that applies severability provisions in the context of citizen initiatives."

Respondents contend the trial court properly recognized that it would be required to re-write a substantial portion of the initiative petition, including the question and interpretative statement. They point out that "no legal authority exists in New Jersey law for a court to re-write an initiative petition through the doctrine of severability." They further contend that precedents concerning severability clauses in statutes and ordinances enacted and adopted "simply do not apply" to initiative petitions. They maintain that "even if the severability doctrine does apply to the [i]nitiative [p]etition, the defective portions are so interwoven with the valid portions, the [p]roposed [o]rdinance can no longer stand."

Whether a court may sever an unlawful clause from an ordinance proposed in an initiative petition and order the excised ordinance placed on the ballot, rather than having the petitioners begin the initiative process anew, is a question our courts have not answered. The issue has received attention

15

elsewhere. The jurisdictions that have addressed it appear to be divided along the lines of the parties to this action. For instance, the Alaska Supreme Court has held that the courts of that state have the authority to sever invalid portions of ordinances proposed by initiative. McAlpine v. Univ. of Alaska, 762 P.2d 81 (Alaska 1988). The court reasoned

> that circumspect judicial exercise of the power to sever impermissible portions of initiatives will promote, rather than frustrate, the important right of the people to enact laws by initiative. Striking the entire initiative on the ground that one sentence of secondary importance is constitutionally invalid would be strong medicine. Such a decision forces the sponsors to choose between abandoning their efforts altogether and submitting a new application and expending, for the second time, the significant time and effort required to generate public enthusiasm and gather the requisite number of signatures. This would seriously impede the ability of the people to initiate laws, particularly when, as is often the case, the sponsors of an initiative are grass roots groups with limited resources.
>
> [Id. at 93 (footnotes omitted); accord City of Colorado Springs v. Bull, 143 P.3d 1127, 1128 (Colo. App. 2006).]

The contrary view, as explained in an early decision by a California appellate court, is that if a provision in an ordinance proposed by initiative is invalid, the entire initiative and ordinance must be invalidated. Bennett v.

16

<u>Drullard</u>, 149 <u>P</u>. 368 (Cal. App. 1915). The California appeals

court explained:

> Here is a power granted unto the people, to propose their own laws for adoption, provided certain legal procedure be followed to properly place said laws before the voters. Assume, if you please, that certain features are included in such proposed laws or in connection therewith, which appealed to the voter, and in fact served as the controlling influence inducing him to sign the petition. Has he not the right to assume, and should not the law protect him in the assumption, that he will have the opportunity and right to vote for the matters which he has petitioned for? Or, shall the law permit the alteration of the measures which he has proposed and petitioned for, to the extent that he will be unable to recognize the same when he comes to cast his ballot?
>
> In fact, is not the whole theory of initiative legislation based upon the security that the legislation proposed and petitioned for by the people shall be voted upon at the polls by them without interference, revision, or mutilation by any official or set of officials?
>
> [<u>Id.</u> at 370. <u>But see</u> <u>AFL v. Eu</u>, 686 <u>P</u>.2d 609, 629 n.27 (Cal. 1984) (noting that an earlier California Supreme Court opinion "left open the test of severability [for initiatives] in preelection review" and stating that "it would constitute a deception on the voters for a court to permit a measure to remain on the ballot knowing that most of its provisions, including those provisions which are most likely to excite the interest and attention of the voters, are invalid."); <u>Bighorn-Desert View Water Agency v. Verjil</u>, 138 <u>P</u>.3d 220, 230 (Cal. 2006) ("When a significant

17

part of a proposed initiative measure is invalid, the measure may not be submitted to the voters.").]

Here, the parties cite to and argue the cases in other jurisdictions that support their respective positions. We choose to resolve the issue based on the Faulkner Act itself and existing precedent in this State.

Indisputably, in Faulkner Act municipalities there is a "strong public policy favoring the right of the voters to exercise their power of initiative." Clean Capital, supra, 228 N.J. Super. at 510 (examining an initiative ordinance under the Optional County Charter Law). That policy derives from the Faulkner Act's goal "to confer upon municipalities the greatest possible power of local self-government consistent with the Constitution of this State." Mun. Council of Newark, supra, 183 N.J. at 363 (citation and internal quotation marks omitted). For that reason, "[s]tatutory provisions for initiative . . . [should] be liberally construed to effect the salutary objective of popular participation in local government." Concerned Citizens of Wildwood Crest v. Pantalone, 185 N.J. Super. 37, 43 (App. Div. 1982).

Those same considerations, however, mandate minimal judicial interference in the initiative process. As previously noted, pre-election judicial review of the validity of an

initiative ordinance "is limited to whether it is defective on its face, or the petitioners have failed to follow the statutory requirements." Clean Capital, supra, 228 N.J. Super. at 510; cf. Comm. to Recall Robert Menendez, supra, 204 N.J. at 101 (noting there is good reason for pre-election judicial review when the law giving rise to an election is defective on its face).

The Faulkner Act itself supports that result. The Act provides that if, within twenty days of an initiative petition's submission to the municipal clerk, the municipal council "shall fail to pass an ordinance requested by an initiative petition **in substantially the form requested . . .** the municipal clerk shall submit the ordinance to the voters unless" the Committee of Petitioners withdraws it. N.J.S.A. 40:69A-191 (emphasis added). We agree with respondents that this language requires that initiative petitions under the Faulkner Act reach the voters in substantially the same form as presented to the petitioners.

Moreover, in view of the strong policies underlying the Faulkner Act, courts should not be making what are often subjective decisions about the intent of voters who have signed initiative petitions. This case illustrates the point. Notwithstanding the severability clause, the parties have made equally plausible arguments about the significance to the

petition's signatories of paragraph 1(D)(9) of the proposed ordinance.

The policies underlying the Faulkner Act would not be served by the court severing part of the ordinance based on its subjective evaluation of the significance of the school board and severability clauses, then rewriting the ordinance, ballot question, and interpretative statement. If a voter signs a petition in a certain form, he or she should expect to see the proposed ordinance in substantially that same form on the ballot. A court cannot discern with any certainty which provisions of an initiative ordinance induced each voter to sign it. It is not the role of the courts to interfere with the legislative powers granted to citizens of Faulkner Act municipalities.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0517-13T1