STATE OF MAINE
LINCOLN, ss.

SUPERIOR COURT
Civil Action
DOCKET NO. AP-2024-005

PATRICIA M. MINERICH, JAMES
FARRIN, VIRGINIA FARRIN,
ELIZABETH GRANT, ROY THOLL,
STEPHEN CARBONE, PAMELA
MANCUSCO, and DANIEL ZAJDEL,

    Plaintiffs,

    v.

BOOTHBAY-BOOTHBAY HARBOR
COMMUNITY SCHOOL DISTRICT and
BOARD OF TRUSTEES OF THE
BOOTHBAY-BOOTHBAY HARBOR
COMMUNITY SCHOOL DISTRICT,
RONNIE CAMPBELL, TROY LEWIS,
MATT DOUBETTE, PAUL ROBERTS,
DARRELL GUDROE, AND SEWALL
MADDOCKS,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON 80B APPEAL AND
INDEPENDENT CLAIM**

Before the court is Patricia M. Minerich'S, et al. ("Plaintiffs"), appeal pursuant to

M.R. Civ. P. 80B, of the decision by the Board of Trustees (the "Board"), governing

committee of Boothbay-Boothbay Harbor Community School District (the "District"), to

deny Plaintiffs' petition to initiate a referendum related to funding a school

construction project. Plaintiffs further bring an independent claim claiming

deprivation of their First Amendment right to petition the government. For the

following reasons, Plaintiffs' appeal and independent claim are DENIED.

1

## I. Background

The District and Board are organized pursuant to 20-A M.R.S. §§ 1601-1752, and as such are tasked in part with initiating referendums to authorize general obligation bonds for school construction projects. Typically, to initiate a referendum, the Board must first sign, by majority, a warrant setting forth the articles for consideration. § 1502. However, if the Board receives a petition to reconsider a prior referendum, the warrant procedure is bypassed, and the prior referendum is placed for election again. § 1504.

In 2024, after the failure of a substantially similar referendum in 2023, the Board initiated a ballot measure to authorize $29,500,000 of bonds for certain school construction projects. The question was placed on the ballot and accepted by voters in April 2024. Shortly thereafter, Plaintiff Minerich composed and circulated a petition (the "Petition") seeking reconsideration of the referendum. The Petition set forth two articles and is worded as follows:

> The undersigned voters of the Towns of Boothbay and Boothbay Harbor, Maine, hereby petition the Board of Trustees to initiate a regional school unit referendum to consider the following articles:
>
> Art. 1: Shall Article 1 as approved by the voters of [the District] on April 24, 2024 . . . be reconsidered and repealed pursuant to 20-A M.R.S. § 1504?
> . . .
> Art. 2: If Article 1 on this ballot is validly approved, resulting in the repeal of the April 24, 2024 vote regarding the Elementary/Middle School Project as described on the April 24, 2024 ballot, do you favor authorizing the board of Trustees of [the District] to update and renovate the existing Boothbay Region Elementary School [(the "Project")], . . . and to issue bonds or notes [] in the name of the District solely for the Project in an amount not to exceed $10,250,300.

(Pls.' Ex. A.) The Petition was signed by Plaintiffs among other registered voters in the District and submitted to the Board. The Board denied the Petition on the grounds

2

that the Petition did not comply with § 1504 because it requested a referendum for two articles, one different from and another unrelated to the April referendum. (Pls.' Ex. B.) Plaintiffs timely filed this appeal.

## II. Discussion

Plaintiffs request (1) declaratory judgment compelling the Board to initiate a referendum on the Plaintiffs' petition; and (2) reasonable costs and attorney's fees for being denied their constitutional right to petition. The court addresses these claims in turn.

### A. 80B Review of Government Action

The parties make several arguments regarding (1) the Board's authority to decline the petition; (2) the court's authority to mandate the Board's action; (3) the legislative history of § 1504; (4) the timing issues; and (5) the technical deficiencies of the Petition. Based on the order put forth below however, the court does not reach all of these arguments. Even if the court agrees with Plaintiffs assertion that (1) the Board's role is ministerial; (2) the court may compel the Board to place the Petition for referendum; (3) the statutory language is unambiguous; (4) there are no timing issues; and (5) the Petition has no technical deficiencies, the court finds in accordance with the Board's assertion that the Petition does not meet the common-sense definition of "reconsideration," and the Board has no obligation to hold a referendum to reconsider the 2024 bond question.

To quote *Eagle Lake v. Comm'r, Dept. of Educ.*, 2003 ME 37, ¶ 6, 818 A.2d 1034, it would not be an oversimplification to suggest the core issue here is the meaning of "petition to reconsider." Section 1504(1) states:

3

The regional school unit board shall, within 60 days, initiate a new regional school unit referendum to reconsider the vote of the previous referendum *if*, within 7 days of the first referendum, at least 10% of [voters] *petition to reconsider a prior regional school unit referendum vote.*

§ 1504(1) (emphasis added). Plaintiffs argue the above language sets forth two procedural requirements to initiate a referendum: (1) a certain percentage of voters; and (2) within a certain timeframe. Certainly, that is what § 1504(1) states. However, as with any statute, § 1504(1) only applies to the subject of § 1504. This essentially places a third requirement on Plaintiffs' petition — that it must be a request to *reconsider* a prior vote.

### 1. The Board's Authority

A petition to reconsider an article is substantively and procedurally distinct from a petition to consider an article. *Cf. Fair Elections Portland, Inc. v. Portland*, 2021 ME 32, ¶ 24, 252 A.3d 504 (allowing municipal officers to distinguish between petitions to revise a charter and petitions to amend a charter in part because of differing procedures). *Compare* § 1504 ("[The Board] shall . . . *initiate a new regional school unit referendum* to reconsider the vote of the previous referendum if, [voters] petition to reconsider a prior [vote]."), *with* § 1482-A(3) (cited by Plaintiffs as alternate reason the Board would be required to accept the Petition) ("if requested [by the same number of voters as required for a petition for reconsideration, the Board] shall place specific articles . . . in the *warrants for consideration* at the next annual . . . budget meeting."). Plaintiffs argue the Board was required to accept their petition under either the reconsideration requirement in § 1504 or the consideration requirement in § 1482-A(3). This is without merit. Plaintiffs cannot have it both ways — they cannot make the Board grant an ambiguous request, especially considering the Petition was

4

represented as a § 1504 petition to the voters. The Board is not empowered to decide the signers actually signed a § 1482-A(3) petition when there is no indication of that intention.

This does not automatically mean, however, the Board, the voters, or the court must accept the Plaintiffs' characterization. Plaintiffs point to three instances where they identified the Petition as a request for reconsideration: the Petition title itself, Plaintiffs' cover letter to the Board, and the language of Article I. The court does not doubt that Plaintiffs believe their Petition is a reconsideration request. As *Fair Elections* points out in the parallel dispute between revision and amendments, "petitioners[ ] could simply label a proposed modification—even one that would obviously constitute a revision—as an amendment and decline to [follow the procedural requirements for revision petitions]." *Fair Elections*, 2021 ME 32, ¶ 24, 252 A.3d 504. That Portland municipal officers recharacterized the petition before them does not, however, imply the Board here can make the same kind of determination. The *Fair Elections* signers not only gave the officers permission to make their choice, but the officers were also faced with a binary choice between a revision and an amendment. *Id.* ¶ 13. The Board here would be taking a liberty they do not have to decide the actual character of the Petition. The binary choice before them was solely whether or not the Petition asked for reconsideration.

In fact, Plaintiffs' suggestion the Board could instead decide it was a § 1482-A(3) petition only reinforces the Board's authority to decide the threshold question. By posing a question of recharacterization to the Board, Plaintiffs concede the Board's authority to characterize the Petition first.

Plaintiffs argue the Board is not permitted to place limitations on the form or substance of a petition outside of what is provided in § 1504.[1] That may be true, but it is not what occurred here. The Board did not impose new requirements on the Petition, nor make judgments about the contents. Neither did the Board decide that the mere existence of a second article disqualified the petition. In their decision, the Board noted, but did not rely on, technical deficiencies and the substance (that is, the amount of money in Article 2) of the articles; the Board's decision, however, turned on the nature of the question posed to the voters. The Board can and should, at minimum, first consider if the voters did in fact request reconsideration.

## 2. Statutory Language

The court begins with the plain language of § 1504 and the full statutory scheme, with a mind towards "achiev[ing] a harmonious result." *Cassidy Holdings, LLC v. Aroostook Cnty. Commissioners*, 2023 ME 69, ¶ 6, 304 A.3d 259 (quoting *Wister v. Mount Desert*, 2009 ME 66, ¶ 17, 974 A.2d 903). If the statute is unambiguous, the analysis ends. "Statutory language is considered ambiguous if it is reasonably susceptible to different interpretations." *Manirakiza v. Dep't of Health & Human Services*, 2018 ME 10, ¶ 8, 177 A.3d 1264 (quoting *Scamman v. Shaw's Supermarkets, Inc.*, 2017 ME 41, ¶ 14, 157 A.3d 223).

Both parties argue, and the court agrees, the statute is unambiguous and thus calls for a plain reading. Although "reconsideration" is not defined in Title 20-A, it is a

---

[1] Plaintiffs further argue the Board has "essentially unlimited authority" to re-pose a question to voters until they get their preferred result and so § 1504 is the voters' only recourse if a referendum passes. Even if the Board has unlimited statutory authority to initiate referenda to borrow funds (subject to the warrant procedure set forth in § 1502), voters do not lack recourse. As in the nearly-identical question in *Dobbs v. Me. Sch. Admin. Dist. No. 50*, 419 A.2d 1024, 1029 (Me. 1980), "if a majority of the citizens believe [the Board has] overused their authority to call [referenda], their remedy lies in the ballot box at the time those directors are up for reelection." The court sees no issue with the Board's authority to re-pose referendum questions, and, indeed, considers it crucial to reflect an evolving electorate.

6

commonly used legislative term. To reconsider is "to discuss or take up (a matter) again." *Reconsider, Black's Law Dictionary* (12th ed. 2024). A motion to reconsider is, in essence, a petition to reconsider made to a court. *Compare Petition, Black's Law Dictionary* (12th ed. 2024) ("A formal written request presented to a court or other official body."), *with Motion, Black's Law Dictionary* (12th ed. 2024) ("A written or oral application requesting a court to make a specified ruling or order."), *Motion for Reconsideration, Black's Law Dictionary* (12th ed. 2024) ("A motion requesting a review of all or part of a ruling or decision before it becomes final . . . used interchangeably with motion for rehearing."), *and Motion for Rehearing, Black's Law Dictionary* (12th ed. 2024) ("A motion asking the court to review and revise all or part of its earlier decision.").

The common thread in these definitions is that reconsideration is a narrow review of one matter. Just as a motion for reconsideration does not request an additional hearing on a different but related matter, a proper § 1504 reconsideration request does not propose a different or replacement ballot initiative. It can only ask if a specific previous referendum should be revisited at the ballot. The outcome of a reconsideration can only be a "yes" — uphold the prior bond amount — or "no" — revoke the prior bond amount. Here, Article 2 of the Petition unambiguously offered the signers the option for an alternative referendum. It offered a replacement, not a reconsideration. *See Replace (2)-(3)*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/replace (last visited Dec. 20, 2024) ("(2) to take the place of especially as a substitute *or* successor; (3) to put something new in the place of[.]"). Thus the Board correctly declined to accept the Petition as a request for reconsideration.

### 3. Alternatives to the Board's Decision

Plaintiffs argue the Board should nevertheless have accepted the Petition. They assert the Petition asks two distinct and unrelated questions, the signers at minimum wanted a reconsideration of the prior measure, and therefore the Board must accept it. Plaintiffs propose two alternative actions the Board could have taken: (1) presenting both articles to the voters and then, if both pass, enlist the courts to determine if the Petition was valid; or (2) sever the articles and solely place Article 1 on the ballot.

Even if the court could mandate the Board's action here, neither option is appropriate. Plaintiffs cannot expect the Board to blindly place any petition on the ballot and simply rely on the courts to come to the rescue. The Legislature explicitly granted the Board statutory authority to hold referendums over borrowing funds for school construction projects. *See, e.g.* 20-A M.R.S. §§ 1651(2)(E) (duties include borrowing funds), 1702 ("district board of trustees may borrow funds to pay for . . . [m]ajor and minor capital costs[.]"), 1502 (method for calling referendum for capital outlay purposes). The courts cannot be expected to undermine this authority by denying the Board first opportunity to manage the process. *Accord In re Jackson Twp. Admin. Code*, 97 A.3d 719, 725 (N.J. Super. Ct. App. Div. 2014) ("[i]f an ordinance is invalid on its face, it would be a useless expenditure of effort and money to submit it to the electorate before its validity has been determined.") (quoting *Newark v. Benjamin*, 364 A.2d 563, 568 (N.J. Super. Ct. Ch. Div. 1976)).

Severing the articles would also be inappropriate. Including two articles on one petition obscures the signers' intent and understanding of the Petition's purpose. Several jurisdictions recognize the confusion that could arise from a multi-issue referendum. *See Common Cause v. State*, 455 A.2d 1, 13 (Me. 1983) (majority of state constitutions call for single-issue referenda to protect voters from "having to vote for a

proposal they dislike in order to get one they want."). Although the Maine Constitution does not require single-issue referenda, the Secretary of State is tasked with certain additional duties for multi-issue state-wide referenda to reduce confusion. *E.g.* 21-A M.R.S. § 906(6)(E) ("If there is more than one direct initiative referendum on the same general subject, the Secretary of State shall write the questions in a manner that describes the differences between the initiatives."). While the Petition is not subject to any such requirement, the Board could, and did, reasonably conclude the Petition could not be severed as Article 2 may have impacted signers' support of Article 1.[2] *Accord In re Jackson,* 97 A.3d at 728 ("A court cannot discern with any certainty which provisions of an initiative ordinance induced each voter to sign it.").

As discussed, the Board cannot and should not be expected to interpret the signers' intent so liberally. Thus the Board correctly declined to act further on the Petition.

### B. First Amendment Right to Petition

Plaintiffs further allege the Board deprived them of their right to petition the government under the First Amendment of the U.S. Constitution. They seek monetary relief under 42 U.S.C. § 1983. Here too Plaintiffs cannot prevail.

Section 1983 provides a mechanism for redress when government officials deprive a party of a federal right under the color of state law. *Antler's Inn & Rest., LLC v. Dep't of Pub. Safety,* 2012 ME 143, ¶ 14, 60 A.3d 1248. It is not, however, the sole or even fundamental mechanism for relief. The exclusivity principle bars § 1983 claims when other means of redress are available. *Id.* This is especially relevant for agency

---

[2] The Board further argues, and the court agrees, providing a less-expensive option could plainly induce a signer to support reconsidering and repealing the more expensive option presented earlier.

actions subject to R. 80B review. *Id.* 80B review is exclusive unless inadequate and would cause a party irreparable harm. *Cayer v. Madawaska,* 2016 ME 143, ¶ 16, 148 A.3d 707.

This action falls squarely within this principle. Plaintiffs allege the same action gave rise to the 80B and the First Amendment claim. *Fair Elections* is again instructive here — there too, the plaintiff lodged both an 80B and a First Amendment claim because the city council did not place a petition question on the ballot, and there too the court held the council was permitted to exercise gatekeeping authority and so there was no constitutional violation. The *Fair Elections* plaintiff's additional due process claims were further precluded by the exclusivity principle. There is no indication that 80B review is an inadequate means of redress for Plaintiffs here. If the court granted the requested declaratory judgment on Plaintiffs' 80B claim, Plaintiffs could also receive the costs and attorney's fees requested on this claim. 14 M.R.S. §§ 5957, 5960, 5962.

The court further finds no evidence Plaintiffs' right to petition the government has been abridged. The right to petition does not extend to a right to force the government to accept the petition on any grounds. *Cf. Jones v. Sec'y of State,* 2020 ME 113, ¶ 22, 238 A.3d 982 (although petition circulations are core political speech, they may be regulated and denied for inadequacy). The court denies relief on Plaintiffs' independent constitutional claim.

## Order

The entry shall be:

1. Plaintiffs' appeal is DENIED.

2. Plaintiffs' independent claim is DENIED.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

DATED:  December 31, 2024

_____
Deborah P. Cashman
Justice, Maine Superior Court